*In re* GORNEY ESTATE

*In re* FRENCH ESTATE

*In re* KETCHUM ESTATE

*In re* RASMER ESTATE

</div>

Docket Nos. 323090, 323185, 323304, and 326642. Submitted December 8, 2015, at Detroit. Decided February 4, 2016, at 9:00 a.m. Leave to appeal granted 499 Mich 975.

In these consolidated estate cases, the Department of Health and Human Services brought separate actions in the Huron County Probate Court, the Calhoun County Probate Court, the Clinton County Probate Court, and the Bay County Probate Court, seeking to recover Medicaid benefits paid on behalf of the decedents by collecting the value of the decedents' homes following their deaths under the Michigan Medicaid estate recovery program (MMERP), MCL 400.112g *et seq*. Regarding the estate of Irene Gorney, the Huron County Probate Court, David L. Clabuesch, J., dismissed plaintiff's claim and entered a judgment in favor of the estate following a bench trial. The Calhoun County Probate Court, Michael L. Jaconette, J.; the Clinton County Probate Court, Lisa Sullivan, J.; and the Bay County Probate Court, Dawn A. Klida, J., granted summary disposition in favor, respectively, of Daniel French, personal representative of the estate of William French; the estate of Wilma Ketchum; and Richard Rasmer, personal representative of the estate of Olive Rasmer. Plaintiff appealed in each case, and the Court of Appeals consolidated the cases.

The Court of Appeals *held*:

1. In 1993, Congress required states to implement Medicaid estate recovery programs, and, in 2007, the Michigan Legislature passed 2007 PA 74. This legislation empowered plaintiff to establish and operate the MMERP. The act, however, under MCL 400.112g(5), required approval by the federal government before the MMERP could be implemented. Michigan finally received approval from the federal Centers for Medicare & Medicaid Services (CMS) for its program on May 23, 2011, and plaintiff circulated instructions to implement the plan on July 1, 2011. The decedents in these cases had begun receiving Medicaid benefits

after the passage of 2007 PA 74, but the initial Medicaid applications filed by the decedents, or by their personal representatives, did not contain any information about estate recovery. In 2012, the decedents' personal representatives submitted form DHS-4574 as part of the annual Medicaid redetermination process. Beginning in 2012, the form contained an acknowledgement provision that advised Medicaid applicants that plaintiff would have the right to seek recovery from the decedents' estates for services paid by Medicaid. Following each decedent's death, plaintiff sought to recover the amount it had paid in Medicaid benefits since July 1, 2010, the date CMS deemed the effective date of the MMERP for its own purposes. In *In re Keyes Estate*, 310 Mich App 266 (2015), the Court of Appeals held that neither the act nor due process required notice of estate recovery at the time of enrollment in Medicaid and that the notice of estate recovery given to the *Keyes* decedent's estate in 2012, combined with the opportunity to contest the property deprivation in the probate court, sufficiently protected the decedent's due-process interests. Because the relevant facts in these cases were the same as those in *Keyes*, the Court was compelled to hold that the notice provided in these cases was statutorily sufficient, and the probate courts erred by concluding otherwise.

2. MCL 400.112g(4) precludes plaintiff from seeking Medicaid recovery if the costs of recovery exceed the amount of recovery available or if the recovery is not in the best economic interest of the state. The Ketchum estate contended that plaintiff sought recovery in violation of MCL 400.112g(4). MCL 400.112j(1) gives plaintiff authority to promulgate rules for the MMERP, and plaintiff has indicated that recovery will only be pursued if it is cost-effective to do so as determined by plaintiff at its sole discretion. That the cost-effectiveness decision is made at plaintiff's sole discretion does not preclude judicial review. However, an adequate record was not created in the probate court from which the Court of Appeals could determine whether plaintiff's decision to seek recovery was unconstitutional, illegal, ultra vires, or an abuse of power. The estate, however, could raise the issue again on remand.

3. The Fourteenth Amendment of the United States Constitution and Article I, § 17 of Michigan's 1963 Constitution provide that the state shall not deprive a person of life, liberty, or property without due process of law. When a protected property interest is at stake, due process generally requires notice and an opportunity to be heard. Defendants raised a multipronged due-process challenge to plaintiff's recovery claims in the probate courts. In

light of the Court's holding in *Keyes*, defendants' due-process challenges had to be rejected to the extent they were based on the lack of notice in the original Medicaid applications. Nor did defendants have a due-process right to the continuation of the favorable Medicaid law that allowed the decedents to receive benefits without having to repay them. No one has a vested right to the continuation of an existing law. Defendants, however, also asserted that plaintiff violated their due-process rights by attempting to recover benefits paid on behalf of the decedents since July 1, 2010, when they were not notified of the program until 2012. MCL 400.112g(5) provides that plaintiff could not implement the MMERP until approval by the federal government was obtained. Federal government approval was not obtained until May 23, 2011. Accordingly, plaintiff could not implement the program until that date, and, in fact, plaintiff did not implement the MMERP until it circulated instructions to its employees to start seeking recovery from estates, which occurred on July 1, 2011. By seeking recovery for benefits paid back to July 1, 2010, plaintiff violated MCL 400.112g(5). While plaintiff was correct that the right to inherit is only an expectancy, when the personal representatives of the estates denied plaintiff's claims, they were not acting to protect their inheritance interests. Rather, the personal representatives stepped into the shoes of the decedents and fought to protect the interests held by the decedents during their lives, and thereby to settle the decedents' estates in accordance with their wills or the law. The decedents had a right to coordinate their need for healthcare services with their desire to maintain their estates. By applying the recovery program retroactively to July 1, 2010, plaintiff deprived individuals of their right to elect whether to accept benefits and encumber their estates, or whether to make alternative healthcare arrangements. Plaintiff impinged on the decedents' rights to dispose of their property. Despite the fact that plaintiff does not try to recover until the individual's death, the individual's property rights are hampered during his or her life. Between July 1, 2010, and July 1, 2011, the date on which the plan was actually implemented, the decedents lost the right to choose how to manage their property. Taking their property to recover costs expended between July 1, 2010, and plan implementation would, therefore, violate the decedents' rights to due process. Accordingly, to the extent that the probate courts disallowed plaintiff's claims for that period, the decision was affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings.

JANSEN, P.J., concurring in part and dissenting in part, concurred with the majority's determinations that the notice provided in the redetermination application was statutorily sufficient, that the lack of notice at the time of enrollment did not violate due process, and that the estates did not have a due-process right to the continuation of a favorable Medicaid law, but dissented from the majority's determinations that plaintiff violated the due-process rights of the decedents by seeking to recover benefits expended between July 1, 2010, and July 1, 2011, and that the Ketchum estate may raise on remand the issue whether plaintiff abused its discretion under MCL 400.112g(4). With regard to the majority's conclusion that plaintiff violated the decedents' due-process rights by seeking to recover benefits expended between July 1, 2010, and July 1, 2011, this Court's decision in *Keyes* was controlling. Although the issues surrounding the retroactive application of the MMERP were not directly raised in *Keyes*, the decision nevertheless dictated the outcome in this case given that this Court in *Keyes* held that the MMERP did not violate due process in spite of the fact that the decedent in that case began receiving Medicaid benefits in April 2010. But even if *Keyes* was not controlling, retroactive application of the MMERP did not violate defendants' right to due process because defendants failed to identify a protected property interest given that the decedents were not deprived of the use or possession of their property during their lives or of their right to dispose of their property during their lives. Even assuming that there was a due-process right that was violated when plaintiff applied the MMERP retroactively, the right was personal to the decedents. Thus, the property interest was not transferable to the estates, and the proceedings did not survive the death of the decedents. Regarding the Ketchum estate, plaintiff's decision regarding the cost of estate recovery was not reviewable by the trial court. Judge JANSEN would have reversed and remanded for entry of judgment in favor of plaintiff.

1. STATUTES — MEDICAID ESTATE RECOVERY PROGRAM — COST-EFFECTIVENESS — JUDICIAL REVIEW.

MCL 400.112g(4) precludes the Department of Health and Human Services from seeking Medicaid estate recovery if the costs of recovery exceed the amount of recovery available or if the recovery is not in the best economic interest of the state; the fact that the cost-effectiveness decision is made in the department's sole discretion does not preclude judicial review.

2. STATUTES — MEDICAID ESTATE RECOVERY PROGRAM — IMPLEMENTATION.

> MCL 400.112g(5) provides that the Department of Health and
> Human Services could not implement the Michigan Medicaid
> estate recovery program until approval by the federal govern-
> ment was obtained; federal government approval was not ob-
> tained until May 23, 2011, and the department did not implement
> the program until July 1, 2011; accordingly, the department could
> not seek recovery of benefits paid before July 1, 2011.

*Bill Schuette*, Attorney General, *Aaron D. Lind-
strom*, Solicitor General, *Matthew Schneider*, Chief
Legal Counsel, and *Brian K. McLaughlin* and *Geral-
dine A. Brown*, Assistant Attorneys General, for the
Department of Health and Human Services.

*Cubitt & Cubitt* (by *E. Duane Cubitt*) for the *Estate
of Irene Gorney*.

*Kreis, Enderle, Hudgins & Borsos, PC* (by *James D.
Lance*), for Daniel French, personal representative of
the Estate of William French.

*Charlotte F. Shoup, PLC* (by *Charlotte F. Shoup*), for
the Estate of Wilma Ketchum.

*Dill Law PLLC* (by *Colin M. Dill*) for Richard
Rasmer, personal representative of the Estate of Olive
Rasmer.

Before: JANSEN, P.J., and CAVANAGH and GLEICHER, JJ.

GLEICHER, J. In these consolidated appeals, the De-
partment of Health and Human Services (DHHS)
seeks recovery of Medicaid benefits paid on behalf of
the decedents. Specifically, the DHHS submitted
claims in the probate courts to collect the value of the
decedents' homes upon their deaths. The estates re-
sponded that the DHHS had provided inadequate
notice of its estate recovery plans and violated their

rights to due process. The probate courts denied the DHHS's collection attempts in all four underlying actions.

On appeal, the DHHS contends that it complied with statutory notice requirements by informing the decedents of estate recovery provisions in annual "re-determination" applications beginning in 2012, and that the judicial process sufficed to meet due-process requirements. This Court recently resolved certain issues raised here in the DHHS's favor in *In re Keyes Estate*, 310 Mich App 266; 871 NW2d 388 (2015).[1] Accordingly, we must reverse in part the probate courts' orders to the extent they conflict with this precedent and remand for further proceedings.

The estates, however, raised additional challenges to the DHHS's collection efforts that are issues of first impression for this Court. We hold that the DHHS would violate MCL 400.112g(5) and the decedents' rights to due process by taking property to cover a Medicaid "debt" incurred before the program creating the debt was approved and implemented. We therefore affirm the probate courts' decisions in relation to recovery claims for sums expended between July 1, 2010, and the July 1, 2011 implementation of the MMERP.

I

"In 1965, Congress enacted Title XIX of the Social Security Act, commonly known as the Medicaid act. This statute created a cooperative program in which the federal government reimburses state governments

---

[1] The Keyes estate has filed an application for leave to appeal this Court's decision in the Michigan Supreme Court. That Court has yet to take action on the application.

for a portion of the costs to provide medical assistance to low-income individuals." *Mackey v Dep't of Human Servs*, 289 Mich App 688, 693; 808 NW2d 484 (2010) (citation omitted). In 1993, Congress required states to implement Medicaid estate recovery programs. See Omnibus Budget Reconciliation Act of 1993, § 13612; 42 USC 1396p(b). In 2007, the Michigan Legislature passed 2007 PA 74, which added MCL 400.112g through MCL 400.112k to the Social Welfare Act, MCL 400.1 *et seq*. This legislation empowered the DHHS[2] to "establish and operate the Michigan Medicaid estate recovery program [MMERP] to comply with" 42 USC 1396p. MCL 400.112g(1). MCL 400.112g(5) required approval by the federal government before the MMERP would be "implement[ed]." Michigan finally received approval from the federal Centers for Medicare & Medicaid Services (CMS) for its program (referred to as a State Plan Amendment) on May 23, 2011, and DHHS circulated instructions to implement the plan on July 1, 2011. *Keyes*, 310 Mich App at 268; Letter from the CMS, May 23, 2011, available at <http://www.michigan.gov/documents/mdch/SPA_10_018_Approved_355355_7.pdf> (accessed December 28, 2015) [https://perma.cc/C9FF-GRJW]. The CMS letter approved this State Plan Amendment in May 2011. The letter attached a form titled "Transmittal and Notice of Approval of State Plan Material."[3] The form indicated that the CMS "received" Michigan's "Proposed Policy, Procedures, and Organizational Structure for Implementation" of a Medicaid estate recovery program on September 29, 2010, approved it on May 23, 2011, and, as

---

[2] The legislation refers to the Department of Community Health. Pursuant to Executive Order No. 2015-4, the authority, powers, duties, functions, and responsibilities of the Department of Community Health were transferred to the DHHS.

[3] Emphasis omitted.

to the CMS, deemed July 1, 2010, the "effective date" of Michigan's recovery program. See Letter from the CMS; Swanberg & Steward, *Medicaid Estate Recovery Update: What You Need to Know Now*, 93 Mich B J 28, 28 (May 2014); Murphy, *Estate Planning with the Advent of Estate Recovery*, 21st Annual Seminar on Drafting Estate Planning Documents (ICLE, January 19, 2012), available at <http://www.icle.org/contentfiles/partners/seminarmaterials/2012CR6535/20122A6535-1.pdf> (accessed December 28, 2015) [https://perma.cc/XD39-E27V].[4]

In the current cases, the decedents began receiving Medicaid benefits after the September 30, 2007 passage of 2007 PA 74. It is undisputed that the initial Medicaid applications (form DHS-4574) filed by the decedents, or by their personal representatives, contained no information about estate recovery. However, it is also undisputed that in order to remain entitled to Medicaid benefits, each applicant was required to resubmit a form DHS-4574 annually for a "redetermination" of eligibility. Each new DHS-4574 contained a section entitled "Acknowledgments," which the applicant certified that he or she "received and reviewed."

At some point during 2012, all four decedents' personal representatives submitted a DHS-4574 as part of the redetermination process. Beginning in 2012, the acknowledgment section of the form included the following provision:

> I understand that upon my death the Michigan Department of Community Health [now the DHHS] has the legal

---

[4] As we discuss in greater detail later in this opinion, the "effective date" for the CMS's purposes is not the date that our Legislature identified as the pertinent starting point for the DHHS's recovery efforts. MCL 400.112g(5) provides that the DHHS "shall not implement a Michigan medicaid estate recovery program until approval by the federal government is obtained."

right to seek recovery from my estate for services paid by
Medicaid. MDCH will not make a claim against the estate
while there is a legal surviving spouse or a legal surviving
child who is under the age of 21, blind, or disabled living
in the home. An estate consists of real and personal
property. Estate Recovery only applies to certain Medicaid
recipients who received Medicaid services after the imple-
mentation date of the program. MDCH may agree not to
pursue recovery if an undue hardship exists. For further
information regarding Estate Recovery, call 1-877-791-
0435.

As with previous applications and redeterminations,
each decedent's personal representative signed the
statement affirming that he or she had received and
reviewed the acknowledgments, which included the
provision on estate recovery.

Following each decedent's death, the DHHS served
claims on the estate seeking to recover the amount the
department had paid in Medicaid benefits since July 1,
2010. In each case, the estate denied the claim, and the
DHHS filed suit in probate court. The estates argued
that because the decedents had not received proper
notice about estate recovery when initially enrolling in
the Medicaid program, the DHHS had failed to comply
with statutory notice requirements and violated their
due-process rights. The estates further contended that
the DHHS violated their rights by seeking recovery of
benefits dating back to July 1, 2010, one year before
the MMERP was approved by the federal government
and approximately two years before any notice was
provided to the recipients. This precluded recovery, the
estates contended. In all four cases, the probate court
rejected the DHHS's claims for recovery against the
estates. In Docket No. 323090, the court entered a
judgment in the estate's favor after a bench trial. In

Docket Nos. 323185, 323304, and 326642, the courts summarily dismissed the DHHS's claims.[5] The DHHS now appeals.

II

We review de novo a trial court's decision on a motion for summary disposition, issues of statutory interpretation, and whether a party has been afforded due process. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277-278; 831 NW2d 204 (2013); *Keyes*, 310 Mich App at 269-270. As noted, many issues in these appeals were raised and decided by this Court in *Keyes*. Therefore, we are not writing on a clean slate.

III

The estates challenged the adequacy and effectiveness of the notice provided in the final paragraph of the multipage redetermination application. The notice provisions of the MMERP are found at MCL 400.112g(3)(e) and (7), and instruct:

> (3) The department of community health shall seek appropriate changes to the Michigan medicaid state plan and shall apply for any necessary waivers and approvals from the federal centers for medicare and medicaid services to implement the [MMERP]. The department of community health shall seek approval from the federal centers for medicare and medicaid regarding all of the following:
>
> * * *
>
> (e) Under what circumstances the estates of medical assistance recipients will be exempt from the [MMERP]

---

[5] In Docket No. 326642, however, the court did not resolve the due-process issue.

because of a hardship. At the time an individual enrolls in medicaid for long-term care services, the department of community health shall provide to the individual written materials explaining the process for applying for a waiver from estate recovery due to hardship. . . .

* * *

(7) The department of community health shall provide written information to individuals seeking medicaid eligibility for long-term care services describing the provisions of the [MMERP], including, but not limited to, a statement that some or all of their estate may be recovered.

In *Keyes*, 310 Mich App at 272-273, this Court examined these provisions and held:

We conclude that the timing provision of MCL 400.112g(3)(e) does not apply in this case. MCL 400.112g(3)(e) provides that "[a]t the time an individual enrolls in medicaid for long-term care services, the department of community health shall provide to the individual written materials explaining the process for applying for a waiver from estate recovery due to hardship." Read in isolation, this provision appears to support the estate's position. But we may not read this provision in isolation. See [*Michigan ex rel*] *Gurganus* [*v CVS Caremark Corp*], 496 Mich [45, 61; 852 NW2d 103 (2014)].

Subsection (3)(e) is part of the larger Subsection (3), which requires the Department to seek approval from the federal government regarding the items listed in the subdivisions. In this case, [as in the current appeals,] the estate does not assert that the Department failed to seek approval from the federal government concerning the estate recovery notice. Rather, the estate asserts that it did not personally receive a timely notice.

The Act contains a second provision concerning notice, and this provision has different language. MCL 400.112g(7) provides that "[t]he department of community health shall provide written information to individuals seeking medicaid eligibility for long-term care services describing the provisions of the [MMERP] . . . ." When the

Legislature includes language in one part of a statute that
it omits in another, this Court presumes that the omission
was intentional. *Polkton Charter Twp v Pellegrom*, 265
Mich App 88, 103; 693 NW2d 170 (2005). Subsection (7)
applies to the estate's case because the estate alleges that
[the decedent] did not receive sufficient notice of estate
recovery. The language of Subsection (7) is similar to that
in Subsection (3)(e), but there is one major difference—
timing. Subsection (3)(e) states that notice should be given
"[a]t the time an individual enrolls in medicaid," while
Subsection (7) states that the Department must provide a
notice when an individual "seek[s] medicaid eligibility[.]"
We presume the Legislature's decision not to use the word
"enrollment" in Subsection (7) was intentional.[6]

The facts underlying the current matters are largely
indistinguishable from those underlying *Keyes*. Ms.
Keyes also first enrolled in Medicaid sometime after
September 30, 2007, and was not notified at that time
of the estate recovery program. Just as in the current
appeals, Ms. Keyes's personal representative did not
receive notice of the recovery program until filing an
application for redetermination of eligibility in 2012.
Just as here, the DHHS did not highlight the change
on the form or provide additional materials "explaining
and describing estate recovery and warning that some
of [the decedent's] estate could be subject to estate
recovery." *Id.* at 273. In *Keyes*, this Court held that the
inclusion of the new paragraph in the form's acknowl-
edgements section "sufficiently notified [the decedent]
that her estate could be subject to estate recovery." *Id.*
The statutes have not been amended since *Keyes* and
still do not demand a separate notification or that the
new provision be highlighted in any manner. Accord-
ingly, we are bound to hold that the notice in these

[6] Some alterations in original.

matters was statutorily sufficient, and the probate courts erred by concluding otherwise.

IV

The Ketchum estate also asserts that the DHHS sought recovery in violation of MCL 400.112g(4), which precludes the department from "seek[ing] Medicaid estate recovery if the costs of recovery exceed the amount of recovery available or if the recovery is not in the best economic interest of the state." In support of this argument, the estate contends that its sole asset was a home sold for $30,000, and that the estate's value was whittled away by funeral expenses, administration costs, and certain exempted items.

We note that the probate court did not consider this issue on the record and the estate's appellate argument is cursory. The statutes provide no guidance on the application of MCL 400.112g(4). MCL 400.112j(1) gives the DHHS authority to "promulgate rules for the [MMERP] . . . ." Some of the DHHS policies are set forth in the Bridges Administrative Policy Manuals (BAM). BAM 120 provides, "Recovery will only be pursued if it is cost-effective to do so as determined by the Department at its sole discretion." DHHS, BAM 120 (January 1, 2016), p 7. The Legislature did not direct the DHHS to act "at its sole discretion," and we located no DHHS publication describing how such determinations are made.

That the cost-effectiveness decision is made at the department's "sole discretion" does not preclude all judicial review. For example, the prosecuting attorney, an officer in the executive branch, has sole discretion to determine whether to charge a juvenile as an adult and whether to proceed with charges against a suspect. See MCL 712A.2d(1); *People v Morrow*, 214 Mich App 158,

165; 542 NW2d 324 (1995). Even so, the judiciary may review the prosecutor's decisions where they are "unconstitutional, illegal, or ultra vires or where the prosecutor has abused the power confided in him." *People v Gilmore*, 222 Mich App 442, 457-458; 564 NW2d 158 (1997) (quotation marks and citation omitted).

A record was not created in the probate court from which we can determine whether the DHHS's decision to seek recovery from Mrs. Ketchum's *de minimis* estate was unconstitutional, illegal, ultra vires, or an abuse of power. Accordingly, to the extent that we reverse the probate court's summary disposition order, the estate may wish to raise this issue again. At this time, however, we discern no ground to grant relief.

V

The estates in these consolidated appeals have also raised a multipronged due-process challenge.

A

This Court rejected a due-process challenge identical to one prong, related to notification at the time of enrollment, in *Keyes*, 310 Mich App at 274-275:

> The Fourteenth Amendment of the United States Constitution and Article I, § 17 of Michigan's 1963 Constitution provide that the state shall not deprive a person of life, liberty, or property without due process of law. *Elba Twp*, 493 Mich at 288. When a protected property interest is at stake, due process generally requires notice and an opportunity to be heard. *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 606; 683 NW2d 759 (2004). Due process is a flexible concept and different situations may demand different procedural protections. *Mathews v Eldridge*, 424 US 319, 334; 96 S Ct

893; 47 L Ed 2d 18 (1976). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Id*. at 333 (quotation marks and citation omitted). The question is whether the government provided "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Petition by Wayne Co Treasurer*, 478 Mich 1, 9; 732 NW2d 458 (2007) (quotation marks and citations omitted).

In this case, the trial court determined that allowing estate recovery under the Act would violate [the decedent's] right to due process because she did not receive notice of estate recovery at the time that she enrolled, as required by MCL 400.112g. However, we have already determined that MCL 400.112g does not require notice at the time of enrollment. Further, the trial court's decision improperly conflated statutory notice issues with the notice issues involved in due process. In this case, the estate was personally apprised of the Department's action seeking estate recovery, and it had the opportunity to contest the possible deprivation of its property in the probate court. It received both notice and a hearing, which is what due process requires. See *Hinky Dinky Supermarket, Inc*, 261 Mich App at 606.

Relying on *Keyes*, we are required to reject the estates' due-process challenges to the extent they are based on the lack of notice in the original application. The decedents in these appeals received the same notice as Ms. Keyes. The estates had the same opportunity to contest the estate recovery claims in the probate court, and therefore received the notice and opportunity to be heard required to satisfy due process.

B

In a second prong, the estates suggest that they had a due-process right to the continuation of the favorable

Medicaid law that allowed decedents to receive benefits from the state without having to repay them. "[N]o one has a vested right to the continuation of an existing law . . . ." *Van Buren Charter Twp v Garter Belt Inc*, 258 Mich App 594, 633; 673 NW2d 111 (2003). The Legislature changed the law to require that the benefits received be repaid to the state upon the death of the recipient from the recipient's estate. Standing alone, this change in law did not deprive the decedents of their rights to due process. See *Saxon v Dep't of Social Servs*, 191 Mich App 689, 700-702; 479 NW2d 361 (1991) (observing that the Legislature can change welfare laws without violating due process).

C

Under a third prong, the estates contended that the DHHS violated their rights to due process by seeking to recover benefits expended since July 1, 2010, when the DHHS did not notify them of the recovery program until 2012. Had the decedents been notified at or before the initiation of the recovery program, the estates contend, they could have considered their estate planning options and decided whether to continue receiving Medicaid assistance or to preserve their estate. In its appellate brief, the Keyes estate challenged the DHHS's attempt to retroactively recover Medicaid benefits expended since July 1, 2010, citing MCL 400.112g(5). This Court did not address this issue in *Keyes*. Therefore, this is an issue of first impression.

The DHHS asserts that upon a decedent's death, his or her property rights are extinguished. As the DHHS does not seek recovery until the beneficiary's passing, that person is never deprived of his or her property rights, negating any potential due-process challenge. The decedent's heirs have only an expectation of inher-

iting, not a vested right. And MCL 700.3101 restricts and limits an individual's power to divest his or her property by will by requiring the estate to settle the rights of creditors first. Accordingly, until creditors such as the DHHS are paid, the heirs have no property right to assert, the department contends.

We first note that the estates erroneously identified the date on which their due-process rights were violated. MCL 400.112g(5) provides that the department "shall not implement a [MMERP] until approval by the federal government is obtained." Federal government approval was not obtained until May 23, 2011. Accordingly, the DHHS and its predecessor could not implement a program until that date. The statute does not define "implement," and we must resort to the dictionary to give this term meaning. *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "implement" as "CARRY OUT, ACCOMPLISH; [*especially*] : to give practical effect to and ensure of actual fulfillment by concrete measures" and "to provide instruments or means of expression for[.]" The DHHS did not implement the MMERP until it circulated instructions to its employees to begin seeking recovery from estates. This occurred on July 1, 2011, after the CMS approved the plan. However, the DHHS could not "implement" the MMERP *before* the federal government approved it. The DHHS sought to give practical effect to its recovery plan by making it "effective" July 1, 2010. This violated MCL 400.112g(5).[7]

---

[7] The federal government permits retroactive application, but does not prevent states from enacting statutes restricting the implementation of their recovery plans until after federal approval. See 42 CFR 447.256(c) ("*Effective date.* A State plan amendment that is approved will become effective not earlier than the first day of the calendar quarter in which an approvable amendment is submitted in accordance with [42 CFR 430.20 and 42 CFR 447.253].").

Moreover, the DHHS incorrectly posits that the personal representative cannot raise a due-process challenge to the department's actions. "Explicit in our state and federal caselaw is the recognition that an individual's vested interest in the use and possession of real estate is a property interest protected by due process." *Bonner v City of Brighton*, 495 Mich 209, 226; 848 NW2d 380 (2014). "[T]he property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Bd of Regents of State Colleges v Roth*, 408 US 564, 571-572; 92 S Ct 2701; 33 L Ed 2d 548 (1972). As noted by the DHHS, the right to inherit is not a definite right; it is an expectancy. See *In re Finlay Estate*, 430 Mich 590, 600-601; 424 NW2d 272 (1988). However, when the personal representatives of the estates denied the DHHS's claims, they were not acting to protect their inheritance interests. Rather, the personal representatives stepped into the shoes of the decedents and fought to protect the interests held by the decedents during their lives, and thereby to settle the decedents' estates in accordance with their wills and the law. See MCL 700.3703. The decedents had a right to coordinate their need for healthcare services with their desire to maintain their estates. The right to dispose of one's property is a basic property right; it is one of the " 'strand[s]' " in the " 'bundle' of property rights," which includes "the rights 'to possess, use and dispose of it.' " *Loretto v Teleprompter Manhattan CATV Corp*, 458 US 419, 435; 102 S Ct 3164; 73 L Ed 2d 868 (1982).[8]

---

[8] Respectfully, the partial dissent conflates defendants' right to challenge the DHHS claims for recovery of estate assets with defendants' "standing" to raise a separate, substantive due-process claim. The personal representatives contend that the DHHS violated the MMERP both by applying it retroactively and by failing to provide the decedents notice of its intent to do so. The MMERP does not *force* elderly,

In *In re Estate of Burns*, 131 Wash 2d 104; 928 P2d 1094 (1997), the Washington Supreme Court was faced with a due-process challenge to the recovery of Medicaid benefits from the recipients' estates. The benefits were paid *before* that state's recovery program took effect. The Court noted that those "recipients who know of the new legal consequence . . . have the choice whether to accept the benefits knowing that recovery may be had from their estate." *Id.* at 117. It was "realistic" that an individual would consider the financial effects before accepting Medicaid, the Court continued, because that state's Medicaid program covers medical expenses for even minor health concerns. A person might choose to forgo a minor procedure to preserve his or her estate. *Id.* "However, recipients of benefits paid before enactment of the statutory provisions would have had no such choice. Application of the statutory provisions in their cases therefore would . . . result in the unfairness for which courts traditionally have disfavored retroactivity." *Id.*

Similarly, in *Estate of Wood v Arkansas Dep't of Human Servs*, 319 Ark 697; 894 SW2d 573 (1995), the Arkansas Supreme Court considered the propriety of recovering Medicaid benefits expended before that state's Medicaid recovery program was enacted. That court did not treat the challenge as a constitutional issue. Even so, the court determined that the recovery program "create[d] a new legal right which allows [the

care-dependent citizens into forfeiting estate assets. Rather, the MMERP is supposed to provide accurate notice to Medicaid applicants of the parameters, rules, and scope of the estate recovery program so that applicants may make reasoned and informed decisions about whether to accept benefits. Defendants in these cases seek to prevent estate recovery based on the DHHS's failure to follow the rules. This is no different than challenging the claim of an estate creditor because it was untimely filed or otherwise legally deficient.

Department of Human Services (DHS)] to file a claim against the estate of a deceased," thereby affecting a vested property right held by the Medicaid beneficiary. *Id.* at 701. Changing the nature of Medicaid from "an outright entitlement" to "a loan" "effect[ed] . . . the nature of the ownership of the DHS payments made on her behalf." *Id.* at 701-702. Therefore, the Arkansas court held that the recovery program could not be applied retroactively.

The same unfairness exists here. By applying the recovery program retroactively to July 1, 2010, the DHHS deprived individuals of their right to elect whether to accept benefits and encumber their estates, or whether to make alternative healthcare arrangements. The DHHS impinged on the decedents' rights to dispose of their property. Despite that the DHHS does not try to recover until the individual's death, that person's property rights are hampered during his or her life. Between July 1, 2010, and July 1, 2011, the date on which the plan was actually "implement[ed]," MCL 400.112g(5), the decedents lost the right to choose how to manage their property. Taking their property to recover costs expended between July 1, 2010 and plan implementation would therefore violate the decedents' rights to due process. Accordingly, to the extent that the probate courts disallowed the DHHS's claims for that period, we affirm.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

CAVANAGH, J., concurred with GLEICHER, J.

JANSEN, P.J. (*concurring in part and dissenting in part*). I concur with the majority's determinations that

the notice provided in the redetermination application was statutorily sufficient, the lack of notice at the time of enrollment did not violate due process, and the estates did not have a due-process right to the continuation of a favorable Medicaid law. However, I respectfully dissent from the majority's determinations that the Department of Health and Human Services (DHHS) violated the due-process rights of the decedents by seeking to recover benefits expended between July 1, 2010, and July 1, 2011, and that the Ketchum estate may raise the issue on remand whether the DHHS abused its discretion under MCL 400.112g(4) by seeking recovery from the Ketchum Estate.

With regard to the majority's conclusion that the DHHS violated the decedents' due-process rights by seeking to recover benefits expended between July 1, 2010, and July 1, 2011, I conclude that this Court's decision in *In re Keyes Estate*, 310 Mich App 266; 871 NW2d 388 (2015), controls the outcome in this case. In *Keyes*, this Court concluded there was no due-process violation in spite of the fact that the decedent did not receive notice of the estate recovery program when she enrolled in Medicaid. *Id.* at 275. The decedent began receiving Medicaid benefits in April 2010. *Id.* at 268. Although the decedent was not notified about the possibility of estate recovery when she enrolled in Medicaid, her son signed a Medicaid application form in May 2012, which acknowledged that the estate was subject to estate recovery for services paid by Medicaid. *Id.* at 268-269. The trial court determined that the estate recovery program violated the decedent's right to due process since she did not receive notice of the estate recovery program when she enrolled in Medicaid. *Id.* at 275. However, this Court reasoned that the estate recovery program did not violate the estate's right to due process because MCL 400.112g did not

require notice at the time of enrollment. *Id*. This Court emphasized that the estate received notice when it was informed of the estate recovery program and that the estate had the opportunity to contest the issue during a hearing in the probate court. *Id*. Thus, this Court determined that there was no due-process violation in spite of the fact that the decedent began receiving Medicaid benefits in April 2010. See *id*.

Although the issues surrounding the retroactive application of the estate recovery program were not directly raised in *Keyes*, the decision nevertheless dictates the outcome in this case. In *Keyes*, this Court stated that the decedent began receiving Medicaid benefits in April 2010, and it can be inferred that the Michigan Department of Community Health (now the DHHS) sought to recover an amount that included services paid for by Medicaid before July 2011. See *Keyes*, 310 Mich App at 268-269. In this case, the DHHS sought to recover for Medicaid benefits paid on behalf of the decedents since July 1, 2010. Thus, this case is similar to *Keyes* since this Court in *Keyes* held that the estate recovery program did not violate due process in spite of the fact that the decedent began receiving Medicaid benefits in April 2010. See *id*. at 275. Therefore, I conclude that *Keyes* dictates the outcome that the estate recovery program did not violate the decedents' right to due process. See *id*.

Furthermore, even if *Keyes* did not control the outcome in this case, I do not believe that the retroactive application of the estate recovery program violated the decedents' right to due process. The majority concludes that the Legislature deprived the decedents of their right to dispose of their property by affecting how the decedents chose to manage their property. "The Fourteenth Amendment of the United States Constitution

and Article 1, § 17 of Michigan's 1963 Constitution provide that the state shall not deprive a person of life, liberty, or property without due process of law." *Keyes*, 310 Mich App at 274. An individual has a vested interest in the use and possession of real estate. *Bonner v City of Brighton*, 495 Mich 209, 226; 848 NW2d 380 (2014). Additionally, a property owner also has a legal right to dispose of his or her property. *Loretto v Teleprompter Manhattan CATV Corp*, 458 US 419, 435; 102 S Ct 3164; 73 L Ed 2d 868 (1982). As explained in *Bd of Regents of State Colleges v Roth*, 408 US 564, 577; 92 S Ct 2701; 33 L Ed 2d 548 (1972):

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

I do not believe that the interest articulated by the majority constitutes a protected property interest. The decedents were not deprived of the use and possession of their property during their lives. See *Bonner*, 495 Mich at 226. In addition, the decedents were not deprived of the right to dispose of their property through transfer or sale because the decedents were not prevented from selling or transferring their property while they were alive. See *Loretto*, 458 US at 435. At most, the interest at stake can be characterized as the right to choose how to manage property or the right to make alternative healthcare arrangements instead of encumbering an estate. See *id.* I conclude that there is no existing rule or common understanding establishing the right to make alternative healthcare arrangements or the right to choose how to manage property. See *Roth*, 408 US at 577. Furthermore, even assuming

that there is a due-process right that was violated when the DHHS applied the estate recovery program retroactively, the right is personal to the decedents, and it is impossible for the estates to know what alternative arrangements the decedents would have made. See *id*. Therefore, I conclude that the decedents were not deprived of a property interest. See *Keyes*, 310 Mich App at 274.

I also do not believe that the estates have standing to challenge whether the estate recovery program violated the decedents' due-process rights. MCL 700.3703(3) provides, "*Except as to a proceeding that does not survive the decedent's death*, a personal representative of a decedent domiciled in this state at death has the same standing to sue and be sued in the courts of this state and the courts of another jurisdiction as the decedent had immediately prior to death." (Emphasis added.) In this case, the property interest described in the majority opinion was personal to the decedents given that it involved the decedents' ability to make decisions regarding the management of their property. Thus, the property interest was not transferable to the estates, and the proceedings did not survive the death of the decedents. See *id*.

Finally, I disagree with the majority's conclusion that the Ketchum estate may challenge on remand whether the DHHS abused its discretion in seeking estate recovery in violation of MCL 400.112g(4). MCL 400.112g(4) provides, "The department of community health shall not seek medicaid estate recovery if the costs of recovery exceed the amount of recovery available or if the recovery is not in the best economic interest of the state." As noted by the majority, "[r]ecovery will only be pursued if it is *cost-effective* to do so as determined by the Department *at its sole discre-*

*tion.*" See DHHS, *Bridges Administrative Policy Manuals (BAM) 120* (January 1, 2016), p 7 (emphasis added). Thus, the DHHS has the *sole discretion* to determine whether estate recovery is cost-effective in accordance with MCL 400.112g(4). Therefore, I do not believe that the DHHS's decision regarding the cost of estate recovery is reviewable by the trial court. See *BAM 120*, p 7. Accordingly, I respectfully disagree with the majority that the Ketchum estate may raise the issue in the trial court on remand.

For the reasons discussed in this opinion, I conclude that the trial courts erred by denying the DHHS's collection attempts. I would reverse and remand for entry of judgment in favor of the DHHS.