# Syllabus

| | |
|---|---|
| Chief Justice:<br>Stephen J. Markman | Justices:<br>Brian K. Zahra<br>Bridget M. McCormack<br>David F. Viviano<br>Richard H. Bernstein<br>Joan L. Larsen<br>Kurtis T. Wilder |

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

*In re* RASMER ESTATE
*In re* GORNEY ESTATE
*In re* FRENCH ESTATE
*In re* KETCHUM ESTATE

Docket Nos. 153356, 153370, 153371, 153372, and 153373. Argued January 12, 2017 (Calendar No. 2). Decided July 31, 2017.

The Department of Health and Human Services (DHHS) brought separate actions in the Bay County Probate Court, the Huron County Probate Court, the Calhoun County Probate Court, and the Clinton County Probate Court, seeking to recover under the Michigan Medicaid estate-recovery program (MMERP), MCL 400.112g *et seq*., an amount equivalent to the Medicaid benefits paid on behalf of the decedents. The Bay County Probate Court, Dawn A. Klida, J.; the Calhoun County Probate Court, Michael L. Jaconette, J.; and the Clinton County Probate Court, Lisa Sullivan, J., granted summary disposition in favor, respectively, of Richard Rasmer, personal representative of the estate of Olive Rasmer, Daniel Gene French, personal representative of the estate of William French, and the estate of Wilma Ketchum. Regarding the estate of Irene Gorney, the Huron County Probate Court, David L. Clabuesch, J., dismissed plaintiff's claim and entered a judgment in favor of the estate after a bench trial. DHHS appealed in each case, and the Court of Appeals consolidated the cases. The Court of Appeals, GLEICHER, J., and CAVANAGH, J. (JANSEN, P.J., concurring in part and dissenting in part), affirmed in part, reversed in part, and remanded the cases to the respective probate courts, concluding that DHHS could pursue its claims for the amounts paid by Medicaid on behalf of the decedents from MMERP's implementation date, July 1, 2011, but not for the amounts paid from the program's effective date, July 1, 2010, to the July 1, 2011 implementation date. *In re Gorney Estate*, 314 Mich App 281 (2016). Relying on *In re Keyes Estate*, 310 Mich App 266 (2015), the Court of Appeals rejected the estates' due-process challenge premised on a lack of notice of estate recovery at the time each decedent enrolled in Medicaid. Finally, the Court of Appeals rejected the Ketchum estate's alternative argument that DHHS's estate-recovery effort violated MCL 400.112g(4), which precludes DHHS from seeking Medicaid recovery if the costs of recovery exceed the amount of recovery available or if the recovery is not in the best economic interest of the state, and remanded to the Clinton County Probate Court for further proceedings. The Supreme Court granted the Rasmer estate's and DHHS's respective applications for leave to appeal. *In re Rasmer Estate*, 499 Mich 975 (2016).

In a unanimous opinion by Justice LARSEN, the Supreme Court *held*:

DHHS did not violate the statutory or constitutional rights of the decedents or their estates by seeking estate recovery under 2007 PA 74 (the MMERP Act). In each case, DHHS was permitted to pursue estate recovery for Medicaid benefits paid on behalf of the decedents after MMERP's July 1, 2010 implementation date.

1. In 1993, Congress required states to implement Medicaid estate-recovery programs; in 2007, the Michigan Legislature responded by passing the MMERP Act, which empowered DHHS to establish and operate MMERP. MCL 400.112g(5) of the Act required federal approval of the program before MMERP could be implemented, and MCL 400.112k made it clear that MMERP applied to all persons who began receiving Medicaid long-term care services after September 30, 2007, the date the MMERP Act was enacted and became effective. But MCL 400.112h(a) limits DHHS's estate recovery to property and other assets included within an individual's estate subject to probate administration. The federal Centers for Medicare and Medicaid Services (CMS) approved Michigan's program in May 2011, and DHHS implemented the plan on July 1, 2011. Each decedent began receiving Medicaid benefits after passage of the MMERP Act, but the initial Medicaid applications filed by the decedents, or by their personal representatives, did not contain any information about estate recovery. After MMERP's implementation, the decedents' personal representatives submitted, as part of the annual Medicaid redetermination process, form DHS-4574, which contained an acknowledgement provision advising Medicaid applicants that DHHS could seek recovery from the decedents' estates for services paid by Medicaid. Following each decedent's death, plaintiff sought to recover an amount equivalent to the Medicaid benefits paid on each decedent's behalf for long-term care services since July 1, 2010, the date CMS deemed the effective date of MMERP.

2. MCL 400.112g(3)(e) provides that when an individual enrolls in Medicaid for long-term care services, DHHS must provide the individual written materials explaining the process for a waiver from estate recovery due to hardship. In addition, MCL 400.112g(7) requires DHHS to provide written information to individuals seeking Medicaid eligibility for long-term care services describing MMERP and including a statement that some or all of their estates may be recovered. In *Keyes*, 310 Mich App 266, the Court of Appeals held that MCL 400.112g(3)(e) does not require DHHS to provide notice regarding estate recovery when an individual enrolls in Medicaid because that provision is part of the larger MCL 400.112g(3), which requires DHHS to seek approval from the federal government regarding certain listed items and the estate had not asserted that DHHS had failed to seek federal approval of the timing provision. *Keyes* accordingly concluded that MCL 400.112g(3)(e) did not require DHHS to provide written materials or timely notice of MMERP. *Keyes* also concluded that MCL 400.112g(7) did not require DHHS to provide written information about MMERP at enrollment in Medicaid because the provision refers to "eligibility" rather "enrollment." *Keyes* erred by severing "eligibility" from "enrollment"; in certain cases MCL 400.112g(7) may require DHHS to provide written information not only when a beneficiary seeks a redetermination of eligibility after enrollment but, contrary to *Keyes*, also just before enrollment, when eligibility initially is sought. But DHHS was not required to notify the decedents or their personal representatives of MMERP at the time they initially applied for Medicaid long-term care services because, under MCL 400.112g(5), MMERP could not be implemented until the program was approved by the

federal government. With regard to the Rasmer estate's appeal, DHHS had no duty under MCL 400.112g(7) to provide written information to Ms. Rasmer or her personal representative about MMERP until the program was approved and implemented. Further, the written acknowledgment provided by DHHS to Ms. Rasmer in 2013, which informed her of the possibility of estate recovery, complied with the MCL 400.112g(7) requirement to provide written information to individuals seeking Medicaid eligibility for long-term care services describing MMERP and including a statement that some or all of their estates may be recovered.

3. The Court of Appeals erred by concluding that DHHS implemented MMERP before it had federal approval because DHHS did not implement MMERP until after federal approval of the program. The Court of Appeals further erred by analyzing the implementation question as a due-process issue when its conclusion rested on its view that DHHS had failed to comply with the MCL 400.112g(5) restriction. Under federal law, the effective date of changes to a Medicaid state plan may predate approval. Accordingly, the MMERP-related state-plan amendments were lawfully given effect as of the July 1, 2010 effective date, even though that effective date occurred before the July 1, 2011 implementation date. In this case, DHHS complied with both the federal effective date (July 1, 2010) and the state implementation date (July 1, 2011) when it sought to recover the amount disbursed by Medicaid on behalf of Ms. Rasmer from the July 1, 2010 effective date; DHHS did not violate the MMERP Act when it pursued estate recovery in each of these cases.

4. The Fourteenth Amendment of the United States Constitution and Article 1, § 17 of Michigan's 1963 Constitution provide that the state shall not deprive a person of life, liberty, or property without due process of law. When a person faces deprivation of a protected property interest, due process generally requires notice and an opportunity to be heard. But it is presumed that citizens know of changes in the law affecting property rights as long as the Legislature has enacted and published the law and afforded citizens a reasonable opportunity to become familiar with its terms; under *Mullane v Central Hanover Bank & Trust Co*, 339 US 306 (1950), the due-process requirements of notice and an opportunity to be heard apply to an adjudication to be accorded finality. Participants in a benefits program, like other persons, have no due-process right to individualized notice of a legislative change. Moreover, MCL 400.112k, which provides that the recovery program applies exclusively to medical assistance recipients who began receiving Medicaid long-term care services after September 30, 2007, and MCL 400.112h(a), which provides that the recovery program is limited to property subject to probate, provided constitutionally adequate notice to beneficiaries that their estates could be encumbered by MMERP.

5. According to the Rasmer estate, Ms. Rasmer was deprived of the right to plan during her lifetime for the disposition of her property after death because she lacked notice that her estate would be encumbered by DHHS's creditor claim. Even if that interest is protected, the estate did not demonstrate any harm to Ms. Rasmer's asserted right to engage in lawful planning to avoid probate administration and so her due-process argument failed.

6. Legislation is retroactive when it applies to events antedating its enactment. The MMERP Act was prospective, not retroactive, legislation because MCL 400.112k specifically provides that the Act applies only to events that postdate its September 2007 enactment.

7. The Court of Appeals erred by addressing the Ketchum estate's argument that DHHS was barred from seeking estate recovery by MCL 400.112g(4), which prohibits DHHS from seeking estate recovery if the costs of recovery exceed the amount of recovery available or if the recovery is not in the best economic interest of the state. Although the Ketchum estate asserted MCL 400.112g(4) as a defense to DHHS's creditor claim, the Clinton County Probate Court disposed of the claim on other grounds. Accordingly, the Court of Appeals unnecessarily addressed the issue rather than leaving it for the probate court to address on remand.

In Docket Nos. 153356, 153370, 153371, 153372, and 153373, Court of Appeals judgment affirmed insofar as it held that DHHS did not violate the statutory or constitutional rights of the decedents or their estates by seeking estate recovery from the MMERP implementation date, July 1, 2011, forward. Court of Appeals judgment reversed insofar as it held DHHS violated the constitutional rights of the decedents or their estates by seeking estate recovery from the July 1, 2010 MMERP effective date to the July 1, 2011 implementation date. Cases remanded to the respective probate courts.

In Docket No. 153372, Court of Appeals discussion regarding MCL 400.112g(4) vacated.

©2017 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

FILED  July 31, 2017

S T A T E   O F   M I C H I G A N

SUPREME COURT

*In re* ESTATE OF OLIVE RASMER.

DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

        Plaintiff-Appellee,

v

RICHARD RASMER, personal
representative of the estate of OLIVE
RASMER,

        Defendant-Appellant.

No. 153356

*In re* ESTATE OF IRENE GORNEY.

---

DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

      Plaintiff-Appellant,

v

ESTATE OF IRENE GORNEY,

      Defendant-Appellee.

No. 153370

---

*In re* ESTATE OF WILLIAM B.
FRENCH.

---

DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

      Plaintiff-Appellant,

v

DANIEL GENE FRENCH, personal
representative of the estate of WILLIAM
B. FRENCH,

      Defendant-Appellee.

No. 153371

---

2

*In re* ESTATE OF WILMA KETCHUM.

---

DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

      Plaintiff-Appellant,

v

ESTATE OF WILMA KETCHUM,

      Defendant-Appellee.

No. 153372

---

*In re* ESTATE OF OLIVE RASMER.

---

DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

      Plaintiff-Appellant,

v

RICHARD RASMER, personal
representative of the estate of OLIVE
RASMER,

      Defendant-Appellee.

No. 153373

---

BEFORE THE ENTIRE BENCH

LARSEN, J.

At issue in these companion cases is whether the Michigan Department of Health and Human Services (DHHS) may recover from beneficiaries' estates an amount equivalent to certain Medicaid benefits paid to, or on behalf of, those beneficiaries during

3

their lifetimes. Pursuant to the Michigan Medicaid estate-recovery program (MMERP), DHHS asserted creditor claims in the amount of those benefits against the estates of four deceased beneficiaries: Ms. Olive Rasmer, Ms. Irene Gorney, Mr. William B. French, and Ms. Wilma Ketchum. In each case, the estate prevailed in the probate court and DHHS appealed. The Court of Appeals consolidated the appeals and reversed in part, concluding that DHHS could pursue its claims for amounts paid after MMERP's July 1, 2011 implementation date, but not for amounts paid between that date and the program's effective date, July 1, 2010. One estate applied to this Court for leave to appeal, asserting that due process barred DHHS from recovering any amount paid before 2013, when the agency had directly notified the estate's decedent of MMERP. DHHS applied for leave to appeal in all four cases, arguing that the Court of Appeals had erred in concluding that the agency was not entitled to recover the amounts paid between July 1, 2010, and July 1, 2011. We granted leave in both applications. Having considered the parties' written and oral arguments, we conclude that DHHS is not barred from pursuing estate recovery for amounts paid after July 1, 2010. We, therefore, affirm in part, reverse in part, and remand the cases to the probate courts for further proceedings.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1965, Congress created the Medicaid insurance program,[1] which provides "federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Schweiker v Gray Panthers*, 453 US 34, 36; 101 S Ct

---

[1] See Social Security Amendments of 1965, PL 89-97, tit XIX, 79 Stat 343 (codified as amended at 42 USC 1396 *et seq*.).

2633; 69 L Ed 2d 460 (1981) (quotation marks omitted). States that choose to participate in Medicaid "must comply with [federal] requirements." *Id*. at 37. In 1993, Congress required states to enact and carry out estate-recovery programs that would seek to recover the costs of certain Medicaid benefits from the beneficiaries' estates. See 42 USC 1396p(b)(1).[2] In 2007, the Michigan Legislature responded by enacting MMERP's enabling legislation, MCL 400.112g to MCL 400.112k, as enacted by 2007 PA 74 (the MMERP Act). The MMERP Act required DHHS[3] to seek the federal government's approval of certain aspects of MMERP, see MCL 400.112g(3); only after getting that approval could DHHS "implement" the program, MCL 400.112g(5). DHHS sought federal approval in September 2010. The federal Centers for Medicare and Medicaid Services (CMS) granted approval in May 2011 and, in accordance with federal regulations, gave the amendments an "effective date" of July 1, 2010.[4]

---

[2] See Omnibus Budget Reconciliation Act of 1993, PL 103-66, § 13612, 107 Stat 627.

[3] MCL 400.112g(1) charges the state Department of Community Health (DCH) with administering MMERP. In 2015, Governor Snyder created DHHS by executive order and transferred to it the "authority, powers, duties, functions, [and] responsibilities . . . of [DCH]." See Executive Order No. 2015-4. This opinion describes some agency conduct predating the executive order and thus undertaken by DCH; for the sake of simplicity we ascribe that conduct to DHHS in this opinion.

[4] See Letter from CMS to DCH, May 23, 2011, available at <http://www.michigan.gov/documents/mdch/SPA_10_018_Approved_355355_7.pdf> (accessed June 21, 2017) [https://perma.cc/UW9J-GA7E]. We observe that, under federal regulations, a plan amendment's effective date is governed by one of two standards. First, if a plan amendment expands benefits or "changes the State's payment method and standards," the effective date may be no "earlier than the first day of the quarter in which" the amendment is submitted for federal approval. 42 CFR 430.20(a)(1) and (b)(2). Second, "[f]or other plan amendments, the effective date may be a date requested by the State if CMS approves it." 42 CFR 430.20(b)(3). The July 1, 2010 effective date satisfies either standard: July 1, 2010, is the "first day of the quarter"

DHHS began estate-recovery efforts on July 1, 2011, explaining in a June 1, 2011 bulletin that federal law required it to "implement" MMERP.[5] The bulletin explained that, in accordance with MMERP, DHHS would "attempt to recover the expenses paid on behalf of a Medicaid beneficiary from their estate." It further detailed which estates and property would be subject to recovery:

> Medicaid beneficiaries who receive nursing facility care, MI Choice home and community based waiver services, home health, home help, and hospital or prescription drug services on or after July 1, 2010, and after they have reached the age of 55 years, will be subject to recovery upon their death or the death of a spouse.

> Funds will be recovered from the beneficiary's estate which is defined as including all property and assets which are subject to probate, with several exceptions. The state will attempt to recover the estate when the beneficiary dies, if they were single, or when the surviving spouse dies, if they had a qualifying spouse.

The five appeals here stem from DHHS's implementing MMERP by seeking to recover from four estates. The agency's efforts were rejected in the probate courts. On appeal, the Court of Appeals reversed the probate courts in part and affirmed in part, holding that DHHS could recover from the estates but only for Medicaid benefits paid after MMERP's implementation date, July 1, 2011. *In re Gorney Estate*, 314 Mich App 281, 300; 886 NW2d 894 (2016). Although DHHS has appealed in this Court in all four cases, the estate of Ms. Olive Rasmer is the only estate to have appealed in this Court.

---

containing September 2010, and it was the "proposed effective date" in the approval request.

[5] See Medical Services Administration, Bulletin No. MSA 11-20, June 1, 2011, available at <https://www.michigan.gov/documents/mdch/MSA_11-20_354432_7.pdf> (accessed June 21, 2017) [https://perma.cc/7Q6A-HSWA].

6

Ms. Rasmer applied for Medicaid benefits in October 2008 and began receiving them in 2009. As with all applicants for Medicaid benefits, Ms. Rasmer was required to submit an eligibility determination form, DHS-4574, both when she applied and periodically thereafter to redetermine benefits eligibility. When she applied in 2008, form DHS-4574 said nothing about estate recovery or MMERP. In September 2013, when her patient representative sought a redetermination of Ms. Rasmer's eligibility, the form contained the following acknowledgment about MMERP:

> 12. Estate Recovery. I understand that upon my death, [DHHS] has the legal right to seek recovery from my estate for services paid by Medicaid. [DHHS] will not make a claim against the estate while there is a legal surviving spouse or a legal surviving child who is under the age of 21, blind, or disabled living in the home. An estate consists of real and personal property. Estate Recovery only applies to certain Medicaid recipients who received Medicaid services after the implementation date of the program. [DHHS] may agree not to pursue recovery if an undue hardship exists. For further information regarding Estate Recovery, call 1-877-791-0435.

Ms. Rasmer began receiving benefits in 2009 and received them until she died, on March 16, 2014. DHHS sought to recover from her estate an amount equal to the benefits paid by Medicaid on her behalf from July 1, 2010, until her death, but Ms. Rasmer's estate rejected the claim. DHHS then sued the estate in the Bay County Probate Court, asserting a right to collect the amount of medical benefits paid on Ms. Rasmer's behalf. The estate asserted, as an affirmative defense, that it was not subject to MMERP because Ms. Rasmer had not been notified of the program when she initially applied for benefits in 2008 and because recovery would violate due process.

Both parties moved for summary disposition under MCR 2.116(C)(10). The probate court granted the estate's motion and denied DHHS's motion, reasoning that

7

DHHS could not recover from the estate because, in its view, the agency had not given Ms. Rasmer notice of the program in accordance with MCL 400.112g. The probate court also denied DHHS's motion for reconsideration. DHHS appealed, arguing that Ms. Rasmer had received all the notice and process to which she was entitled.

As in Ms. Rasmer's case, in each of the other three cases, the decedent "began receiving medicaid long-term care services after [September 30, 2007]," MCL 400.112k, when the Legislature enacted the MMERP Act. After DHHS implemented MMERP in July 2011, the decedent's patient representative signed a statement acknowledging an understanding of DHHS's "legal right to seek recovery from [the decedent's] estate for services paid by Medicaid." After the decedent's death, DHHS sought recovery from the decedent's estate for amounts disbursed after the July 1, 2010 effective date of the plan. The estate rejected the claim, and DHHS sued in probate court. After DHHS's claim was dismissed, DHHS appealed, arguing that the estate had received sufficient notice to satisfy both the governing statute, MCL 400.112g(7), and due process.

On DHHS's motion, the Court of Appeals consolidated the four cases for oral argument, and, in a split decision, affirmed in part, reversed in part, and remanded to the four probate courts for further proceedings. See *Gorney*, 314 Mich App at 300. The panel majority determined that it was bound by *In re Keyes Estate*, 310 Mich App 266; 871 NW2d 388 (2015), which had concluded that the acknowledgment signed by the patient representative met the requirement of MCL 400.112g(7) to "provide written information" and that the probate proceedings complied with due process. *Gorney*, 314 Mich App at 294-295. But *Keyes* had not addressed whether DHHS could "recover costs expended between July 1, 2010 and plan implementation [i.e., July 1, 2011]," and the

8

Court of Appeals determined that DHHS could not do so without "violat[ing] the decedents' rights to due process." *Id*. at 300. It further determined that the Ketchum estate could argue on remand that DHHS, by pursuing estate recovery, had violated MCL 400.112g(4), which provides that DHHS "shall not seek Medicaid estate recovery if the costs of recovery exceed the amount of recovery available or if the recovery is not in the best economic interest of the state."[6] See *id*. at 293-294.

DHHS applied for leave to appeal in all four cases in this Court. Ms. Rasmer's estate also applied. This Court granted leave in both applications. See *In re Rasmer Estate*, 499 Mich 975 (2016). For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## II. STANDARD OF REVIEW

A trial court's grant of summary disposition is reviewed de novo. See *Bernardoni v Saginaw*, 499 Mich 470, 472; 886 NW2d 109 (2016). We also review de novo questions of constitutional and statutory interpretation. See *Associated Builders & Contractors v Lansing*, 499 Mich 177, 183; 880 NW2d 765 (2016); *Rock v Crocker*, 499 Mich 247, 260; 884 NW2d 227 (2016).

## III. ANALYSIS

### A. STATUTORY COMPLIANCE

Ms. Rasmer's estate argues that two provisions of the MMERP Act, MCL 400.112g(3)(e) and (7), required DHHS to give Ms. Rasmer certain "written materials"

---

[6] The Ketchum estate was the only party to raise this issue.

and "written information" when she first applied for Medicaid benefits in 2008 and that DHHS's failure to have done so precludes it from recovering against her estate. The estate also argues that when DHHS gave her written information about MMERP in 2013, that information was not detailed enough to comply with the statute. For the reasons explained below, we conclude that DHHS was not required by statute to notify Ms. Rasmer of MMERP in 2008 and that the written information provided to her in 2013 complied with the statute.

1. DHHS'S DUTY TO GIVE WRITTEN INFORMATION AT ENROLLMENT

The Rasmer estate asserts that MCL 400.112g(3)(e) and (7), read together, bar DHHS from recovering from a beneficiary's estate unless DHHS had provided the beneficiary with certain written information when he or she first enrolled in Medicaid. MCL 400.112g(3)(e) is part of a subsection, MCL 400.112g(3), requiring DHHS to "seek [federal] approval" of several items. The estate relies on subsection (3)(e), which concerns exemptions for hardship.[7] It states in relevant part:

> [DHHS] shall seek appropriate changes to the Michigan medicaid state plan and shall apply for any necessary waivers and approvals from the federal centers for medicare and medicaid services to implement the Michigan medicaid estate recovery program. [DHHS] shall seek approval from the federal centers for medicare and medicaid regarding all of the following:
>
> * * *
>
> (e) Under what circumstances the estates of medical assistance recipients will be exempt from the Michigan medicaid estate recovery program because of a hardship. At the time an individual enrolls in medicaid for long-term care services, [DHHS] shall provide to the

---

[7] The Rasmer estate does not argue that it was entitled a hardship waiver.

10

individual *written materials* explaining the process for applying for a waiver from estate recovery due to hardship. [DHHS] shall develop a definition of hardship according to section 1917(b)(3) of title XIX that includes, but is not limited to, [certain enumerated factors.] [Emphasis added.]

The estate also relies on subsection (7), which requires DHHS to provide "written information" to certain individuals:

> [DHHS] shall provide *written information* to individuals seeking medicaid eligibility for long-term care services describing the provisions of the Michigan medicaid estate recovery program, including, but not limited to, a statement that some or all of their estate may be recovered. [Emphasis added.]

The estate argues that Ms. Rasmer should have been provided the "written information" described in subsection (7) when she applied for Medicaid benefits in 2008. Its argument takes two forms that lead to the same place. It first argues as follows: Subsection (3)(e) requires DHHS, "[a]t the time an individual enrolls in medicaid," to provide to that individual "written materials explaining the process for applying for a waiver from estate recovery due to hardship." But because an explanation of a hardship waiver is incomplete without a full explanation of MMERP's provisions, subsection (3)(e) presupposes that DHHS already has complied with subsection (7). In other words, subsection (7) implicitly requires that "written information . . . describing the provisions of [MMERP]" be provided "[a]t the time an individual enrolls in medicaid." Alternatively, the estate argues, since one must seek eligibility before initially enrolling in Medicaid, DHHS must comply with subsection (7) when someone first applies to the program. Either way, the estate concludes, DHHS violated subsection (7) because Ms. Rasmer received no written information about MMERP when she originally applied for Medicaid benefits in 2008.

11

The Court of Appeals rejected similar arguments in *Keyes*. *Keyes* reasoned "that the timing provision of MCL 400.112g(3)(e) does not apply" because that provision "is part of the larger Subsection (3), which requires [DHHS] to seek approval from the federal government regarding the [listed] items," and the estate had asserted no failure by DHHS to seek federal approval about the timing provision. *Keyes*, 310 Mich App at 272. *Keyes* thus concluded that subsection (3)(e) had no bearing on DHHS's duty to provide written materials or timely notice. See *id*. at 272-273. The Court went on to analyze subsection (7), concluding that because the provision refers to *eligibility* rather than *enrollment*, it did not require DHHS to provide written information at enrollment. See *id*.[8]

We agree with the estate that the Court of Appeals erred in *Keyes* when it divorced "eligibility" from "enrollment." Yet we cannot conclude that DHHS had a duty to give Ms. Rasmer "written information . . . describing the provisions of" MMERP when she

---

[8] We are not sure that we agree with *Keyes*'s interpretation of MCL 400.112g(3)(e). As explained above, *Keyes* observed that the provision requiring DHHS to provide "written materials" at enrollment was embedded in one of a list of items for which DHHS had to seek federal approval. If context and placement in the statute are given great weight, this provision might be read, consistent with *Keyes*, to impose on DHHS only a duty to seek federal approval of various items. DHHS certainly was bound under subsection (3)(e) to seek federal approval of the "circumstances [under which] the estates of medical assistance recipients will be exempt from [MMERP] because of a hardship." Subsection (3)(e) might also be read, awkwardly, to have required DHHS to seek federal approval of both its "definition of hardship" and its plan to provide "written materials explaining the process for applying for a [hardship] waiver" "[a]t the time an individual enrolls in medicaid." But if these two commands were not embedded in this list of items for federal approval, we would read them to impose duties on DHHS, namely, to "provide . . . written materials" and to "develop a definition of hardship." We need not work through this confounding puzzle of text and context, however, because we conclude that the proper interpretation of subsection (7) does not depend on subsection (3)(e).

12

applied for Medicaid benefits in 2008. Subsection (7) states that DHHS "shall provide written information to individuals seeking medicaid eligibility for long-term care services describing the provisions of [MMERP] . . . ." Unlike subsection (3)(e), which requires the provision of written materials "[a]t *the time* an individual enrolls," subsection (7) imposes a duty whenever "individuals seek[] medicaid eligibility for long-term care services . . . ." Under federal law, DHHS determines eligibility when someone first applies for Medicaid benefits and must also periodically redetermine eligibility. See 42 CFR 435.907, 435.911, and 435.916. And so, in certain cases, DHHS may be required to provide written information not only when a beneficiary seeks a redetermination of eligibility after enrollment, but also, contrary to *Keyes*, just before enrollment, when eligibility initially is sought.

Ms. Rasmer applied for Medicaid benefits in 2008, which we assume made her an individual "seeking medicaid eligibility." According to the estate's theory, her 2008 application triggered DHHS's duty to "provide written information . . . describing the provisions of [MMERP] . . . ." MCL 400.112g(7). But under MCL 400.112g(5), DHHS could "not implement [MMERP] until approval by the federal government [was] obtained." Although the MMERP Act clearly required DHHS to "establish an estate recovery program" whose activities would include, among other things, "[a]ctions necessary to collect amounts subject to estate recovery," MCL 400.112g(2), without federal approval, MMERP itself did not exist in final form. So it is neither surprising nor unlawful that DHHS provided no information "describing the provisions of" MMERP in 2008. MMERP was not approved by the federal government until 2011; only then did DHHS know what "the provisions of" the program would actually be, and only then

13

could DHHS have complied with the statute by "provid[ing] written information" about those provisions. MCL 400.112g(7).

The estate concedes that to accept its reading would be to ask DHHS to do the impossible.[9] That suggests to us that the estate's reading is wrong. The estate maintains instead that the MMERP Act intended the impossibility of performance to bar DHHS from ever recovering against the estates of decedents who had enrolled in Medicaid before MMERP was federally approved in May 2011. In other words, the estate argues, the Legislature intended to "grandfather" into the old Medicaid regime all persons who began receiving Medicaid before MMERP's approval or implementation in 2011. The statutory scheme reflects no such intent. By its terms, the Act expressly grandfathers into the old Medicaid regime only one group of Medicaid recipients: those "who began receiving medicaid long-term care services" before the Act's September 30, 2007 effective date. MCL 400.112k. In light of that explicit grandfathering provision, we have a hard time concluding that the statute is best read to have implicitly created another, by mandating the impossible. To the contrary, we think the Act is more reasonably read as follows: MCL 400.112k made clear (to DHHS and Medicaid

_____

[9] The estate writes in its leave application: "DHHS could not, at any time before approval of its [estate-plan amendments] on July 1, 2011, advise Ms. Rasmer, or any applicant or person receiving Medicaid for that matter, of what estate recovery would entail." The estate continued in its brief: "Because no estate recovery program was in effect at the time Olive Rasmer applied for enrollment in Medicaid, the DHHS' predecessor, the Department of Community Health, could not have complied with MCL 400.112g by providing the statutorily-required written information to her describing the provisions of the estate recovery program and what actions may be taken against her estate at the time that she applied for enrollment in Medicaid."

recipients alike) that all persons who "began receiving medicaid long-term care services" after September 30, 2007, could be subject to estate recovery for the services they would receive; MCL 400.112g(7) then required DHHS to "provide written information" about that recovery only when it became possible to do so—once "the provisions of" the recovery program had been approved by the federal government and could, in fact, be "describ[ed]."[10]  We conclude that DHHS had no duty to "provide written information" under MCL 400.112g(7) before MMERP was federally approved in May 2011 or implemented on July 1, 2011, and so DHHS did not violate subsection (7) when it did not "provide written information" about MMERP to Ms. Rasmer when she applied for Medicaid in 2008.[11]

---

[10] This analysis also forecloses the argument that the statute itself required DHHS to provide written information regarding MMERP at its "effective date," July 1, 2010. Because MMERP did not exist in final form before it was federally approved, it could not have been accurately described before mid-2011.

[11] The estate argues that in addition to violating MCL 400.112g(7), DHHS also violated the following federal guidance: "[DHHS] should provide notice to individuals at the time of application for Medicaid that explains the estate recovery program in your State." CMS State Medicaid Manual § 3810(G)(1), available at <https://www.cms.gov/Regulations-and-Guidance/guidance/Manuals/Paper-Based-Manuals-Items/CMS021927.html> (accessed June 23, 2017) [https://perma.cc/N6M5-FLNR]. The estate failed to raise this argument in the Court of Appeals and so it is not properly before us. But we observe, consistent with further federal guidance, that the provision relied on by the estate is not stated in mandatory terms. See U.S. Department of Health and Human Services, *Medicaid Estate Recovery* (April 1, 2005) at n 25 ("Note that this section [of the *State Medicaid Manual*] describes what states 'should' do, not what they 'must' do."), available at <https://aspe.hhs.gov/basic-report/medicaid-estate-recovery#note25> (accessed June 23, 2017) [https://perma.cc/6USC-LZAF]. And, indeed, the estate concedes that "the CMS' *State Medicaid Manual* is not binding law as such . . . ."

## 2. THE SUFFICIENCY OF DHHS'S WRITTEN INFORMATION

The estate further argues that when Ms. Rasmer received information about the estate-recovery program in September 2013, that information fell short of the requirements of MCL 400.112g(7). DHHS sought to comply with subsection (7) by including the following statement in the acknowledgment section of its eligibility application:

> 12. Estate Recovery. I understand that upon my death [DHHS] has the legal right to seek recovery from my estate for services paid by Medicaid. [DHHS] will not make a claim against the estate while there is a legal surviving spouse or a legal surviving child who is under the age of 21, blind, or disabled living in the home. An estate consists of real and personal property. Estate Recovery only applies to certain Medicaid recipients who received Medicaid services after the implementation date of the program. [DHHS] may agree not to pursue recovery if an undue hardship exists. For further information regarding Estate Recovery, call 1-877-791-0435.

According to the estate, this statement failed to give Ms. Rasmer enough information to put her on notice of "the particular actions that may be taken against her estate upon her death. In particular, the statement lacks any specificity as to the nature and scope of the estate recovery program and was clearly insufficient to make her aware of the potential financial consequences of estate recovery to her estate after her death."

DHHS's statement could have provided greater detail about MMERP—and perhaps, as a matter of best practices, it should have done so. But it is not clear that the MMERP Act required so much of DHHS. As noted above, MCL 400.112k apprised persons like Ms. Rasmer that their participation in Medicaid would come with the possibility of estate recovery, and MCL 400.112g(7) required only that DHHS, after federal approval of MMERP and after it was otherwise ready to carry out such recovery,

16

"provide written information to individuals seeking medicaid eligibility for long-term care services describing the provisions of [MMERP], including, but not limited to, a statement that some or all of their estate may be recovered." As it concerns the content of this "written information," subsection (7) is, by its plain language, open-ended and not particularly exacting. DHHS's statement was sufficient to meet the letter of the requirement, and we do not see a statutory violation in DHHS's failure to do more. Even accepting the estate's characterization of the statute's requirements, however, DHHS's statement sufficed. The statement's lead sentence, cast in the first person ("I," "my death," "my estate"), highlights that the individual seeking benefits falls within the "scope" of MMERP. The statement further mentions "recovery" or "estate recovery" five times and thus conveys that the "nature" of MMERP is to seek reimbursement from the individual's estate "for services paid by Medicaid." Finally, the statement speaks of a "claim" against an estate, thereby signaling the actions that may be taken against an estate—namely, a claim against the estate for the cost of the services paid by Medicaid and the potential for adjudication of the claim in probate court. We conclude that DHHS's statement meets the challenge posed by Ms. Rasmer's estate and complies with subsection (7).

### 3. PREMATURE IMPLEMENTATION

The Court of Appeals held that DHHS impermissibly sought to recover Medicaid disbursements made between MMERP's effective date (July 1, 2010) and its implementation date (July 1, 2011). Although the panel majority cast the issue as

17

sounding in due process, we analyze it as statutory because the Court's conclusion rested on its view that DHHS had failed to comply with a statutory restriction.[12]

The Court of Appeals looked to MCL 400.112g(5), which forbade DHHS to "implement [MMERP] until approval by the federal government [was] obtained." See *Gorney*, 314 Mich App at 297. It observed that "implement" means "carry out," "accomplish," and especially "give practical effect to and ensure of actual fulfillment by concrete measures . . . ." *Id*., quoting *Merriam-Webster's Collegiate Dictionary* (11th ed) (capitalization and quotation marks omitted). It then reasoned as follows:

> The DHHS did not implement the MMERP until it circulated instructions to its employees to begin seeking recovery from estates. This occurred on July 1, 2011, after the CMS approved the plan. However, the DHHS could not "implement" the MMERP *before* the federal government approved it. The DHHS sought to give practical effect to its recovery plan by making it "effective" July 1, 2010. This violated MCL 400.112g(5). [*Gorney*, 314 Mich App at 297.]

We are not convinced by this reasoning. The Court recognized that "DHHS did not implement the MMERP until it circulated instructions to its employees" on July 1,

---

[12] The Court of Appeals' view that MMERP had been unconstitutionally applied to recover Medicaid disbursements made between MMERP's effective date and its implementation date rested on its conclusion that DHHS had contravened the statute by "implementing," i.e., giving "practical effect to," the estate-recovery plan before federal approval. *Gorney*, 314 Mich App at 297. But not every government action taken in excess of statutory authority constitutes a due-process violation. Cf. *Amsden v Moran*, 904 F2d 748, 757 (CA 1, 1990) ("[A] regulatory board does not transgress constitutional due process requirements merely . . . by making demands which arguably exceed its authority under the relevant state statutes.") (quotation marks omitted); *Smith v Picayune*, 795 F2d 482, 488 (CA 5, 1986) ("Converting alleged violations of state law into federal . . . due process claims improperly bootstraps state law into the Constitution.") (quotation marks omitted). Moreover, for the reasons discussed, we disagree that DHHS violated the statute.

2011, *id.*, from which it should have concluded that DHHS had not "implement[ed] MMERP until [after] approval by the federal government [was] obtained," MCL 400.112g(5), in May 2011. Yet the Court curiously concluded that subsection (5)'s ban on preapproval "implementation" had been violated because DHHS, in accordance with federal authorization, "sought to give practical effect to [i.e., implemented] its recovery plan by making it 'effective' July 1, 2010." *Gorney*, 314 Mich App at 297. In other words, the Court of Appeals concluded, MMERP was both not implemented until July 1, 2011, and implemented on July 1, 2010. On the present record we have no trouble concluding that DHHS did not "implement" MMERP before getting federal approval of the amendments in May 2011. The record reflects that, until then, DHHS's MMERP-related conduct was limited to "seek[ing] appropriate changes to the Michigan medicaid state plan and . . . apply[ing] for any necessary waivers and approvals from the federal [CMS] to *implement* [MMERP] . . . ." MCL 400.112g(3) (emphasis added).[13]

We emphasize that in seeking to recover the amount disbursed back to the July 1, 2010 effective date, DHHS complied with both the federal effective date and the state

---

[13] In finding a statutory violation in DHHS's recovery efforts, it seems the Court of Appeals may have believed that, by limiting when DHHS could "implement" MMERP, MCL 400.112g(5) also limited the extent to which DHHS could seek recovery under that program; that is, DHHS could not seek to recover the amounts disbursed before the program received federal approval because to do so would be to "implement" the program too early. As discussed above, however, when the Legislature enacted MCL 400.112k, it made clear that individuals who "began receiving medicaid long-term care services" after September 30, 2007, could be subject to estate recovery for those services. We do not read subsection (5) to have imposed a separate limitation on the extent of the recovery otherwise authorized under the MMERP Act; it simply required that DHHS not seek to carry out that recovery before federal approval had been received.

implementation date. As noted above, the MMERP Act required DHHS to "seek appropriate changes to the Michigan medicaid state plan . . . ." MCL 400.112g(3). That plan "is a comprehensive written statement . . . describing the nature and scope of" Michigan's Medicaid program, 42 CFR 430.10, and setting forth the "policies in effect under" that program.[14] An amendment to a state plan must be submitted to the federal government for approval, see 42 CFR 430.12(c)(2), and federal law contemplates that an amendment's effective date may predate its submission date (and *a fortiori* its approval date), see 42 CFR 430.12; see also note 4 above. The MMERP Act says nothing about the effective date of the MMERP-related amendments to the state plan, but it does bar DHHS from implementing MMERP before federal approval. See MCL 400.112g(5). Because an effective date may predate approval and because implementation must be contemporaneous with or postdate approval, it follows that the MMERP-related state-plan amendments could lawfully be given effect as of a date before implementation. Indeed, the record here leaves no doubt that the federal government gave the state-plan amendments an effective date of July 1, 2010, and that DHHS implemented MMERP no earlier than May 2011. So DHHS did not violate the MMERP Act when in July 2011 it implemented the program by seeking to recover from the estates those amounts disbursed after July 2010.

For the reasons above, we conclude that DHHS was not barred by statute from pursuing estate recovery in these cases.

---

[14] Michigan Medicaid State Plan, p 1, available at <http://www.mdch.state.mi.us/dch-medicaid/manuals/michiganstateplan/michiganstateplan.pdf> (accessed June 26, 2017) [https://perma.cc/P3VG-SA3B].

## B. DUE PROCESS

The Court of Appeals held that DHHS could recover against the estates for benefits paid after MMERP's July 1, 2011 implementation date but that DHHS's efforts to recover "retroactively" to July 1, 2010, violated the estates' due-process rights.[15] DHHS challenges the Court of Appeals' constitutional determination as to that one-year period. Ms. Rasmer's estate[16] argues that the Court of Appeals' holding did not go far enough. It contends that DHHS cannot recover against the estate at all because Ms. Rasmer was not given constitutionally timely and sufficient notice of MMERP and because MMERP was "retroactively" applied to her. We address these arguments in turn.

### 1. DEPRIVATION OF A PROTECTED INTEREST

Both the state and federal constitutions protect persons from deprivations by the government of "life, liberty or property, without due process of law."[17] Const 1963, art

---

[15] As discussed above, we think this argument is better characterized as alleging statutory, rather than constitutional, shortcomings.

[16] The estates of Ms. Gorney, Mr. French, and Ms. Ketchum purport to challenge in this Court the Court of Appeals' determination that DHHS could recover for benefits paid after July 1, 2011. We note that none of those estates applied for leave to appeal that decision in this Court. Their due-process challenges to recovery after this period are, therefore, waived. See MCR 7.305(C)(2) (governing timeliness of applications for leave to appeal in this Court). We note, however, that their arguments mirror those of Ms. Rasmer's estate, which we consider and ultimately reject.

[17] Although Michigan's due-process clause "may, in particular circumstances, afford protections greater than or distinct from" its federal counterpart, the estates have not urged separate interpretations, "so we will not seek to determine otherwise." *AFT Mich v Michigan*, 497 Mich 197, 245; 866 NW2d 782 (2015).

1, § 17; accord US Const, Am XIV, § 1.  A threshold inquiry thus is "whether the interest allegedly infringed by the challenged government action . . . comes within the definition of 'life, liberty or property.' "  *Bonner v Brighton*, 495 Mich 209, 225; 848 NW2d 380 (2014).  Consistent with traditional notions of property ownership, we have recognized a "right to dispose of . . . property."  *Olson v Rasmussen*, 304 Mich 639, 650; 8 NW2d 668 (1943).  And the United States Supreme Court has determined that statutory entitlements to benefits, such as those offered by the Medicaid program, also "are appropriately treated as a form of 'property' protected by the Due Process Clause."  *Atkins v Parker*, 472 US 115, 128; 105 S Ct 2520; 86 L Ed 2d 81 (1985).

The estates do not contend, however, that their decedents were improperly deprived of Medicaid benefits.  Instead, they argue that the decedents were deprived of the right to plan during their lifetimes for the disposition of their property after death because they lacked notice that their estates would be encumbered by DHHS's creditor claim.  We need not decide today whether the right articulated by the estates is an interest protected by the Constitution because, as we explain below, even if a due-process right is at stake, no due-process violation has been committed.

## 2.  TIMELY AND SUFFICIENT NOTICE

The Rasmer estate argues that DHHS violated Ms. Rasmer's due-process rights by failing to give her "timely and sufficient" notice of MMERP and its consequences.  Echoing the statutory arguments we rejected above, the estate argues that for notice of MMERP to have been constitutionally timely, DHHS would have needed to provide that notice when Ms. Rasmer first enrolled in the Medicaid program in 2009.  Alternatively,

22

the estate argues that, at a minimum, DHHS was constitutionally required to provide such notice before it could pursue estate recovery. These claims fail, however, because the estate cannot demonstrate any harm to the alleged interest, namely, Ms. Rasmer's right "to engage in lawful planning to avoid probate administration."

The recovery program limits its reach to "property and other assets included within an individual's estate that is subject to probate administration . . . ." MCL 400.112h(a). Thus, avoiding probate will also avoid the recovery program. But the estate gives no indication of how additional notice from DHHS would have changed Ms. Rasmer's approach to disposing of her property upon her death. Although the estate's brief identifies means to avoid probate—trusts, Lady Bird deeds,[18] and the like—it does not argue that or how Ms. Rasmer would have employed any of those means if she had received earlier written notice of MMERP. Nor does it explain how she was prevented from pursuing those estate-planning measures given the notice she received. Tellingly, the estate offers no suggestion that Ms. Rasmer sought to protect her estate from probate even after she acknowledged, through her personal representative, in September 2013, the existence of MMERP and the possibility of recovery against her estate.

The estate's failure to demonstrate harm to the alleged interest also defeats its constitutional challenge to the notice's sufficiency. But this insufficient-notice argument

---

[18] See *Black's Law Dictionary* (10th ed), p 503 ("[A *Lady Bird deed* is a] deed that allows a property owner to transfer ownership of the property to another while retaining the right to hold and occupy the property and use it as if the transferor were still the sole owner. This type of deed is used in a few states as an estate-planning tool to avoid probate."); see also *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 687 n 2; 880 NW2d 269 (2015) (describing a Lady Bird deed).

23

fails for another reason as well. The estate argues that to provide constitutionally adequate notice, DHHS would need to "provide an individual with written materials clearly describing the provisions of [MMERP] and what actions may be taken against the estate at the time the individual applies for enrollment in [MMERP]." In other words, the estate contends that Ms. Rasmer was entitled to individualized notice of a burdensome legislative program. But we presume that the citizenry "know[s] the law," *Mudge v Macomb Co*, 458 Mich 87, 109 n 22; 580 NW2d 845 (1998), as long as the Legislature has "enact[ed] and publish[ed] the law, and afford[ed] the citizenry a reasonable opportunity to familiarize itself with its terms," *Texaco, Inc v Short*, 454 US 516, 532; 102 S Ct 781; 70 L Ed 2d 738 (1982); accord *Kentwood v Sommerdyke Estate*, 458 Mich 642, 664; 581 NW2d 670 (1998), citing *Texaco*, 454 US at 530. This is true even when the government makes changes in the law affecting property rights. See *Texaco*, 454 US at 536. And "participants in [a benefits] program [have] no greater right to advance notice of [a] legislative change . . . than [do] any other voters." *Atkins*, 472 US at 130. The estate points to no defect in the enactment or publication of the MMERP Act; and while it does argue that Ms. Rasmer lacked a reasonable opportunity to understand that enrollment in the Medicaid program would subject her estate to recovery, as we explain below, this argument misunderstands the Supreme Court's due-process jurisprudence.

Relying on *Mullane v Central Hanover Bank & Trust Co*, 339 US 306; 70 S Ct 652; 94 L Ed 865 (1950), and mirroring its statutory argument rejected above, the estate argues that neither the notice provided by the MMERP Act itself nor the "general and vague" individualized notice provided in the redetermination application was " 'reasonably calculated' to apprise a Medicaid applicant of the financial consequences of

24

the estate recovery program." But the Supreme Court has made clear that the "due process standards of *Mullane* apply to an 'adjudication' that is 'to be accorded finality.' " *Texaco*, 454 US at 535, quoting *Mullane*, 339 US at 314. Here, that adjudication came in the form of the probate proceedings below,[19] and the estate does not allege that it lacked notice or an opportunity to be heard there. Nor could it have done so since the record reflects the estate's appearance in the matter and successful prosecution of a motion for summary disposition. The estate also appeared and defended itself before the Court of Appeals and was granted leave in and appeared before this Court. The estate charges DHHS with taking "legally unconstrained collection efforts," but it does not explain how, if at all, those efforts overcame the procedural safeguards present in these judicial proceedings, which indisputably complied with *Mullane*.[20] We, therefore, have little trouble concluding that the estate's opportunity to challenge DHHS's recovery efforts in our state's judicial system, before any estate recovery took place, met this aspect of due process.[21]

---

[19] In MCL 400.112g(3)(d), the Legislature directed DHHS to seek federal approval of the "actions [that] may be taken to obtain funds from the estates of recipients subject to recovery . . . , including notice and hearing procedures that may be pursued to contest actions taken under [MMERP]." DHHS sought and obtained approval to pursue collection through the probate courts. See Letter from CMS to DCH at 12-14.

[20] We recognize that the gist of the estate's *Mullane* argument is that Ms. Rasmer was deprived of notice that would have enabled her to avoid the probate proceedings in the first instance—and that being subject to such proceedings is not the "process" to which the estate believes it was entitled. But as explained below, insofar as Ms. Rasmer was entitled to notice sufficient to allow her to protect her estate from probate, we conclude that state and federal law provided that notice.

[21] Cf. *United States v James Daniel Good Real Prop*, 510 US 43, 53; 114 S Ct 492; 126 L Ed 2d 490 (1993) ("The right to prior notice and a hearing is central to the Constitution's

That leaves the estate with the argument that specific and individualized notice was constitutionally required to apprise Ms. Rasmer of the law. The Supreme Court has rejected that notion: "it has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights." *Texaco*, 454 US at 536. Rather, as stated above, "a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Id*. at 532. In 1993, Congress required states participating in Medicaid to "seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan," 42 USC 1396p(b)(1); see also note 2 above, with recovery to take place "from the individual's estate," 42 USC 1396p(b)(1)(A), (B), and (C). The MMERP Act was enacted in 2007 and directed DHHS to "establish and operate [MMERP] to comply with" the federal statute. MCL 400.112g(1). To that end, the Act required DHHS to "seek appropriate changes to the Michigan medicaid state plan," MCL 400.112g(3), the "comprehensive written statement . . . describing the nature and scope of" Michigan's Medicaid program, 42 CFR 430.10. The MMERP Act expressly noted that its provisions would apply exclusively "to medical assistance recipients who began receiving medicaid long-term care services after" September 30, 2007, MCL 400.112k, and that the recovery

---

command of due process."); *Zinermon v Burch*, 494 US 113, 132; 110 S Ct 975; 108 L Ed 2d 100 (1990) ("In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so . . . ."); *Mudge*, 458 Mich at 99, quoting *Zinermon*, 494 US at 132. Although we conclude that the predeprivation procedures provided in our state courts met the requirements of due process, we should not be understood to have decided that due process required those procedures.

26

program would be limited to property subject to probate, see MCL 400.112h(a).[22]  Taken together, those statutes were sufficient to provide constitutionally adequate notice to Medicaid beneficiaries that their estates could be encumbered by MMERP.

We, therefore, conclude that due process did not require DHHS to provide Ms. Rasmer with individualized notice of MMERP either when she enrolled in Medicaid or as a condition precedent to recovering disbursed funds.

## 3.  RETROACTIVE RECOVERY

Ms. Rasmer's estate also suggests that the MMERP Act constitutes retroactive legislation, but the estate provides little by way of argument that the MMERP Act is retroactive, i.e., that it "appl[ies] to events antedating its enactment."  *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 585; 624 NW2d 180 (2001), quoting *Landgraf v USI Film Prods*, 511 US 244, 282; 114 S Ct 1483; 128 L Ed 2d 229 (1994).  In any event, the MMERP Act appears plainly prospective.  It was approved by the Governor on September 30, 2007, and given "immediate effect."  2007 PA 74.  Its effect was limited "to medical assistance recipients who began receiving medicaid long-term care services *after* the effective date [i.e., September 30, 2007] of the amendatory act that added this section [i.e., 2007 PA 74]."  MCL 400.112k (emphasis added).  The law on its

---

[22] Moreover, 2007 PA 73, approved by the Governor on the same day as the MMERP Act (2007 PA 74), amended MCL 700.3805(1)(f) to include certain debts, including "medical assistance payments that are subject to adjustment or recovery from an estate," in the priority scheme for payment of claims against an estate.  Public Act 73 thus further underscored that property and other assets in Ms. Rasmer's estate would be subject to recovery under MMERP.

face, therefore, applies only to events postdating its enactment.[23]  For these reasons, we conclude that the MMERP Act is not retroactive legislation.

The estates urge, alternatively, that DHHS violated their due-process rights by enforcing MMERP "retroactively."  By this, they do not mean that DHHS attempted to apply MMERP to the estates of those who began receiving Medicaid benefits before the MMERP Act's effective date.  Instead, two different retroactivity theories are advanced. First is the theory embraced by the Court of Appeals, that DHHS violated due process when it implemented MMERP on July 1, 2011, and sought to recover amounts disbursed back to the federally authorized effective date, July 1, 2010.  We rejected that theory above, noting parenthetically that it seems best understood to assert a statutory, rather than constitutional, violation.  Second is the theory that DHHS violated due process by seeking to recover from estates the amount of those Medicaid benefits disbursed before the estates' decedents were provided with individualized written information about MMERP's provisions.  As explained above, the estates received the notice to which they were entitled under due process, and the estates' decedents were not constitutionally

---

[23] As the Supreme Court explained in *Landgraf*, a "statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law."  511 US at 269 (citation omitted).  The Court elaborated in a footnote: "Even uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct: a new property tax or zoning regulation may upset the reasonable expectations that prompted those affected to acquire property; a new law banning gambling harms the person who had begun to construct a casino before the law's enactment or spent his life learning to count cards." *Id*. at 269 n 24.  Here, by contrast, the MMERP Act's effective-date provision, MCL 400.112k, ensured that the law would take effect before any person to which it applied had received Medicaid benefits.

28

entitled to "individualized notice of a burdensome legislative program." These "retroactivity" theories must also fail for the additional reason, elaborated above, that no estate has demonstrated any harm to its alleged interest. For these reasons, we conclude that due process does not bar DHHS's recovery efforts in these cases. We thus reverse the Court of Appeals' conclusion that DHHS could not recover for benefits paid from July 1, 2010, to July 1, 2011, and affirm its conclusion that due process does not otherwise bar estate recovery.

## C.  JUDICIAL REVIEW

Ms. Ketchum's estate argued in the courts below that DHHS was forbidden to pursue recovery against it by MCL 400.112g(4), which states as follows:

> [DHHS] shall not seek medicaid estate recovery if the costs of recovery exceed the amount of recovery available or if the recovery is not in the best economic interest of the state.

DHHS argues here that subsection (4) provides no judicially enforceable barrier to estate recovery even "if the costs of recovery exceed the amount of recovery available or if the recovery is not in the best economic interest of the state." Although Ms. Ketchum's estate interposed subsection (4) as a defense to DHHS's creditor claim, the probate court disposed of the claim on other grounds. The estate revived the defense in the Court of Appeals, as an alternative basis to affirm the probate court. Although the Court of Appeals noted "that the probate court did not consider this issue on the record and [that] the estate's appellate argument is cursory," *Gorney*, 314 Mich App at 293, that Court nonetheless waded in. But it had no need to reach this issue. Neither do we. We,

therefore, vacate the Court of Appeals' discussion of this issue so that the probate court on remand may, if appropriate, address it on a blank slate.

## IV. CONCLUSION

As explained above, DHHS did not violate the statutory or constitutional rights of Ms. Rasmer, Ms. Gorney, Mr. French, Ms. Ketchum, or any of their estates. We thus affirm in part and reverse in part the Court of Appeals' judgment and remand these cases to the probate courts for proceedings consistent with this opinion.

Joan L. Larsen
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder

30